NOTICE

Decision filed 11/01/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220689-U

NO. 5-22-0689

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 17-CF-14 |
| | ) | |
| JONATHAN R. GALLEY, | ) | Honorable |
| | ) | Thomas E. Griffith, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE McHANEY delivered the judgment of the court.
Presiding Justice Boie and Justice Cates concurred in the judgment.

**ORDER**

¶ 1  *Held*: Where defendant did not receive reasonable assistance of counsel with regard to his petition for postconviction relief, we reverse the order of the circuit court that dismissed the defendant's petition at the second stage of proceedings, and we remand for further second-stage proceedings with new counsel.

¶ 2  The defendant was charged with multiple counts of sexual offenses against an 11-year-old child. Following a bench trial, the defendant was found guilty, and the trial court entered judgment on four counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2016)) and two counts of aggravated criminal sexual abuse (*id.* § 11-1.60(c)(1)(i)). The defendant was sentenced to 37 years in the Illinois Department of Corrections followed by mandatory supervised release (MSR) for an indeterminate period ranging from 3 years to life. One of the terms of the defendant's MSR conditions included a total prohibition on accessing social

1

networking websites (730 ILCS 5/3-3-7(a)(7.12) (West 2016)). The defendant appealed. On direct appeal, the Fourth District appellate court held that the total prohibition on accessing social networking websites violated the first amendment. *People v. Galley*, 2021 IL App (4th) 180142. The defendant then filed a petition for postconviction relief, which was dismissed at the second stage. This appeal follows.

¶ 3                                          I. Background

¶ 4                                          A. Pretrial

¶ 5     On July 26, 2017, the defendant, along with trial counsel, appeared before the trial court for a waiver of jury trial proceeding. Trial counsel noted that the State had received DNA lab reports, but the defendant had not yet received them. The defendant executed a written jury waiver, and the trial court, after admonishing the defendant of his right to a jury trial, accepted the waiver. The trial court, noting that discovery was not complete, ruled that the defendant knowingly and voluntarily waived his right to jury trial.

¶ 6     On August 31, 2017, the defendant filed an answer to a felony pretrial discovery order, stating that he may call at trial any and all witnesses listed by the State as well as Abby Antunez, his girlfriend, who would testify that she spent every Tuesday night until noon Wednesday with the defendant starting on October 25, 2016, until the date of his arrest and that she spent Saturdays with the defendant starting on October 15, 2016, through November 26, 2016. The bench trial was held on November 7, 2017.

¶ 7                                          B. Bench Trial

¶ 8     We recite only those facts pertinent to our decision. Following the testimony of the first witness, the trial judge asked trial counsel how many more witnesses he intended to call. Trial

counsel informed the judge that the defendant's girlfriend at the time, Abby Antunez, may testify, although she ultimately did not.

¶ 9    The testimony at trial revealed that the defendant had been in a relationship with A.S.'s grandmother, and he had been a grandfather figure in her life. In 2016, A.S., 11 years old at the time, would often visit the defendant's home with her family, and she would sometimes spend nights alone at the defendant's home. When her stepmother noticed A.S. acting out in a sexualized way, she asked A.S. if anyone had asked to see her naked. A.S. answered in the affirmative and provided details of what happened when she had stayed at the defendant's house, including the fact that the defendant attempted to insert his penis into her vagina, but was unable to do so.

¶ 10    On December 22, 2016, A.S.'s father took her to the hospital. An emergency room nurse testified at trial that evidence was recovered and stored in a sexual assault evidence collection kit. At the hospital, A.S. reported that the defendant digitally penetrated her, attempted penile penetration, and used vibrators on her.  The following day A.S.'s father went to the defendant's home to investigate her accusations. In the defendant's bedroom, he photographed the nightstand and the contents of one of the drawers which contained vibrators and lubricants. When police searched the defendant's home, they recovered the vibrators and lubricants.

¶ 11    A.S. testified that the defendant sexually assaulted her in a series of incidents from October to December 2016. She also testified that the defendant had shown her pornography. A.S. described one of the vibrators that the defendant had inserted into her vagina as small with red dots and white gems. She also testified that the defendant used a blue vibrator and a purple one. A.S. testified that the defendant attempted to insert the purple vibrator inside of her, but it hurt so he was unable to do so. DNA profiles matching A.S. to a very high degree of probability were found, among other profiles, on two of the vibrators, but were not found on the purple vibrator.

3

¶ 12     The defendant testified on his own behalf. He denied touching A.S. inappropriately, making contact with her genitals, penetrating her, or watching pornography with her. He acknowledged that the vibrators were his, but he denied that A.S. would have had contact with them. He stated that all visitors to his home had access to the unlocked bedroom and nightstand drawer. The defendant admitted that he sometimes watched pornography on his computer, but he denied doing so when A.S. was around.

¶ 13     Following the bench trial, the defendant was found guilty of four counts of predatory criminal sexual assault and two counts of aggravated criminal sexual abuse.

¶ 14                          C. Posttrial Motions

¶ 15     Following the defendant's direct appeal, the Fourth District appellate court held that the defendant's MSR conditions violated the first amendment. On June 22, 2021, postconviction counsel filed a petition for postconviction relief. In the petition, postconviction counsel asserted, *inter alia*, that the defendant's right to effective assistance of counsel was violated when his trial counsel failed to call "certain witnesses" and that absent the deficiencies alleged by the defendant, the outcome would have been different. Postconviction counsel also asserted that "the allegations contained in Petition are adequately supported by the transcripts which are included in the court file" and that "additional affidavits supporting Defendant's claims are not necessary, as the record supports the allegations contained herein."

¶ 16     The State filed a motion to dismiss the defendant's petition for postconviction relief. On October 12, 2022, a hearing was held on the State's motion. The court noted that it had advanced the defendant's postconviction petition to the second stage because the defendant had waived his right to jury trial prior to the time all discovery had been received and reviewed by the defendant and that "didn't quite sit well with the Court." After hearing arguments, the court found, *inter alia*,

4

that as to the waiver of jury trial, the claim was rebutted by the record because the defendant, at the time of executing the waiver, knew that discovery was incomplete, and he had been fully admonished by the court. The court also found that as to the failure to call certain witnesses, postconviction counsel did not provide names of potential witnesses or attach affidavits from those witnesses laying out what they would have testified to at trial. The court granted the State's motion to dismiss the defendant's postconviction petition.

¶ 17     On October 14, 2022, postconviction counsel filed a certificate of compliance with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) certifying that she made amendments to the defendant's petition that she believed were necessary for an adequate presentation of the defendant's contentions. This appeal follows.

¶ 18                                    II. Analysis

¶ 19     On appeal, the defendant contends, and the State does not refute, that postconviction counsel was retained by the defendant. The record is devoid of any support for the defendant's contention. Following his conviction, the defendant was found to be indigent, and the clerk was directed to file a notice of appeal on his behalf. The record does not contain an entry of appearance for postconviction counsel. The first mention of postconviction counsel is in a docket entry dated September 13, 2021, where she is identified as "defense counsel." At a status hearing held on October 13, 2021, postconviction counsel is listed as an assistant public defender for the defendant. Additionally, at a status hearing held on June 16, 2022, postconviction counsel was identified as a public defender for the defendant. At the status hearing, the state's attorney noted that postconviction counsel had filed an amended petition. On October 27, 2022, the defendant was once again found to be indigent, and the Office of State Appellate Defender was appointed to represent the defendant in the instant appeal.

5

¶ 20 Although there may still be some question as to whether postconviction counsel was retained or appointed, under the facts of this case, it is not fatal to the defendant's claims as, in either case, the defendant was entitled to a reasonable level of assistance. "[T]here is no difference between appointed and privately retained counsel in applying the reasonable level of assistance standard to postconviction proceedings." *People v. Cotto*, 2016 IL 119006, ¶ 42. "Both retained and appointed counsel must provide reasonable assistance to their clients after a petition is advanced from first-stage proceedings." *Id*. Here, the defendant's petition for postconviction relief was dismissed at the second stage of proceedings.

¶ 21 Turning to the merits of the defendant's claims, he alleges that postconviction counsel did not provide a reasonable level of assistance where she failed to support the defendant's claim that trial counsel was ineffective for failure to call "certain witnesses." In essence, the defendant argues that due to this failure, postconviction counsel unreasonably allowed his claim of ineffective assistance of trial counsel to be forfeited. As the defendant does not otherwise challenge the court's ruling on the merits of his postconviction claims, he has forfeited review of those claims. See *People v. Conick*, 232 Ill. 2d 132, 144 (2008) (issues not raised by postconviction petitioner in the appellate court are forfeited on review). Because we reverse and remand on this issue alone, we need not address defendant's remaining claim that counsel did not provide reasonable assistance where she failed to have his affidavit notarized before attaching it to the petition.

¶ 22 The Post-Conviction Hearing Act (Act) provides a statutory remedy to criminal defendants who assert claims for substantial violations of their constitutional rights at trial. *People v. Edwards*, 2012 IL 111711, ¶ 21. Proceedings under the Act are commenced by the filing of a petition in the circuit court in which the criminal proceedings took place. 725 ILCS 5/122-1(b) (West 2018). The postconviction petition must "clearly set forth the respects in which petitioner's constitutional

rights were violated" and shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached. 725 ILCS 5/122-2 (West 2020).

¶ 23    "The Act provides a three-stage mechanism for a defendant to advance such a claim." *People v. Addison*, 2023 IL 127119, ¶ 18. "At the first stage, the trial court must independently review the petition within 90 days of its filing and determine whether it is frivolous or patently without merit." *Id.*; 725 ILCS 5/122-2.1(a)(2) (West 2020). Thereafter, if the petition is not summarily dismissed, it must be set for further consideration in the second stage. 725 ILCS 5/122-2.1(b) (West 2020); *Addison*, 2023 IL 127119, ¶ 18.

¶ 24    " 'The second stage of postconviction review tests the legal sufficiency of the petition.' " *People v. Dixon*, 2018 IL App (3d) 150630, ¶ 12 (quoting *People v. Domagala*, 2013 IL 113688, ¶ 35). At this stage, the petitioner's allegations are taken as true, unless affirmatively refuted by the record; then, the question becomes whether the allegations establish a constitutional violation. *Id.* " 'In other words, the "substantial showing" of a constitutional violation that must be made at the second stage [citation] is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven* at an evidentiary hearing, would entitle petitioner to relief.' " (Emphasis in original.) *Id.* (quoting *Domagala*, 2013 IL 113688, ¶ 35). At the second stage, the petitioner bears the burden of making a substantial showing of a constitutional violation. *Id.* "If the State moves to dismiss, the trial court may hold a dismissal hearing, which is still part of the second stage." *People v. Wheeler*, 392 Ill. App. 3d 303, 308 (2009). "The purpose of the first two stages is to determine whether an evidentiary hearing is even necessary." *People v. Fields*, 2020 IL App (1st) 151735, ¶ 42. A reviewing court applies a *de novo* standard to a trial court's dismissal of a postconviction petition at the second stage. *Addison*, 2023 IL 127119, ¶ 17.

7

¶ 25 While Rule 651(c) applies to both retained and appointed postconviction counsel when representing a defendant who originally filed a *pro se* postconviction petition, the rule does not apply when retained counsel files the initial petition. *People v. Richmond*, 188 Ill. 2d 376, 381-83 (1999). "[T]he purpose of Rule 651(c) is to ensure that counsel shapes the petitioner's claims into proper legal form and presents those claims to the court." *People v. Perkins*, 229 Ill. 2d 34, 44 (2007). However, it is not necessary for counsel to amend a *pro se* petition if the amendment "would only further a frivolous or patently nonmeritorious claim." *People v. Greer*, 212 Ill. 2d 192, 205 (2004). Here, if postconviction counsel had found the claim that trial counsel was ineffective for failure to call "certain witnesses" to be frivolous, the appropriate procedure would have been to omit the claim from the petition. *Dixon*, 2018 IL App (3d) 150630, ¶ 22. But by including the claim, postconviction counsel averred that the claim was not frivolous and, thus, she was required to plead sufficient facts to support the claim. See *id.* ¶ 21 (postconviction counsel failed to provide reasonable assistance where he failed to allege any specific facts in support of the general claims raised in the petition).

¶ 26 Assuming that postconviction counsel was retained, she still had a duty to provide a reasonable level of assistance to the defendant. Here, the amended petition contained no factual allegations regarding the failure to call "certain witnesses." The petition did not state who these witnesses were or indicate what their testimony would have been; it merely alleged that trial counsel provided ineffective assistance for failure to call these witnesses. "Nonfactual and nonspecific assertions which merely amount to conclusions are not sufficient to require a hearing under the Act." *People v. Coleman*, 183 Ill. 2d 366, 381 (1998). Because the amended petition failed to allege specific facts to support its general claim, postconviction counsel failed to shape the defendant's claim into proper legal form, and, thus, she did not provide reasonable assistance.

¶ 27 We decline the defendant's invitation to speculate that the "certain witnesses" that trial counsel failed to call was Abby Antunez, the defendant's girlfriend. While that may well be, the fact remains that she was not named in the defendant's amended petition.

¶ 28 We conclude that this cause should be remanded to the circuit court. On remand, postconviction counsel should be given the opportunity to file an amended petition and proceed in a manner consistent with the Act. We express no opinion on the question of whether an evidentiary hearing is necessary, or even appropriate, in this case.

¶ 29                                III. Conclusion

¶ 30 The judgment of the circuit court is reversed. The cause is remanded so that postconviction counsel may file a new amended postconviction petition that adequately presents the defendant's claim.

¶ 31 Reversed and remanded.